## UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

ALVIN C. ALLEN Jr.
    Plaintiff

v.

TREVOR ZINK Esq., BRIAN WHITESIDE
AND AUTOFICIO, L.L.C.
    Defendants

Civil Action No. 1: 20 cv 45

JURY TRIAL DEMANDED    **FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

Judge Truncale

FEB - 6 2020

BY_____
DEPUTY_____

### PLAINTIFF ALVIN C. ALLEN'S ORIGINAL CERTIFIED COMPLAINT

TO THIS HONORABLE COURT; Plaintiff Alvin C. Allen now files this, his Original

Complaint against Defendants Brian Whiteside, Autoficio, LLC and Trevor Zink for (1)

forgery/wire fraud (2) statutory fraud in a stock transaction under Tex. Biz. Code Title 3 Chap.

27 (3) common law fraud, and, (4) conspiracy to commit fraud in a stock transaction.

### THE PARTIES

1.      Defendant Brian Whiteside ("Whiteside") is a resident of Washington State whose

service address is: 73 CASCADE KY, BELLEVUE, WA, 98006-1023.

2.      Defendant Autoficio, LLC ("Autoficio") was an L.L.C., now administratively

dissolved under the laws of the State of Washington. Autoficio may be served at: 73

CASCADE KY, BELLEVUE, WA, 98006-1023  Whiteside is Autoficio's sole manager,

3.      Defendant Trevor Zink, ("Zink") a minority Kapexia shareholder and practicing

attorney, from San Jose, California may be served at his law office, 1500 East Hamilton Ave.,

Suite 202, Campbell CA., 95008

4.      Plaintiff Alvin Charles Allen, Jr. ("Allen") at all times here in, was a Texas resident,

and founded Cimble Corp. in Liberty Texas. He owns majority (92.85%) controlling stock; sole

Director and, CEO of Cimble Corporation. Allen is located in at 1343 CR 2005, Liberty Texas.

1

5.      Kapexia, L.L.C., a now suspended defunct California L.L.C., (according to California SoS.) owns the other 7.14% of Cimble stock which Plaintiff sues Defendants for recovery.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over the subject matter of this dispute under 28 USC § 1332(a) at least because of diversity. The parties are completely diverse and the amount in controversy includes damages greater than $75,000.   Venue is proper under 28 USC § 1391(b)(2) and (3)

## NOTICE THIS SUIT SHOULD BE JOINED TO THE RELATED LAWSUITS

7.      **This suit is related to** Civil Action No. 4:17-cv-404 now pending in the USDCEDT SHERMAN DIVISION; Magistrate Priest-Johnson.  Plaintiff (herein) requests this lawsuit should be immediately joined with the now pending SHERMAN lawsuit which is set for trial on March 02, 2020, and styled therein as Defendant Allen's Compulsory Counterclaims. Magistrate Priest-Johnson suggested that Plaintiff take this action (filing this lawsuit) to preserve Allen's NEWLY DISCOVERED undisputed and admitted to evidence of forgery, wire fraud, conspiracy to commit frauds learned first, in both of Brian Whiteside's sworn depositions which took place on February 7-8, 2019.  Plaintiff Allen brings this suit Pro Se to keep his timely claims from expiring under terms of the statute of limitations.

8.      Plaintiff Allen has up to 1 year to sue the responsible parties after newly discovered material evidence of well hidden material frauds against Plaintiff, otherwise limited by statue were actually newly discovered.  Plaintiff Allen has been seeking council to represent him herein to no avail, Allen has no available money.  Therefore, this lawsuit is timely filed in BEAUMONT and Plaintiff Allen now represents himself Pro Se.

9.      Alternatively, Plaintiff Allen is also seeking leave of this Court to file and maintain a

derivative action herein, Pro Se, suing in place of defunct Cimble Corporation, for the reasons detailed below.  Plaintiff Allen states in his sworn affidavit attached to this lawsuit, and certifies that; i.) prior to the frauds and crimes complained of by Plaintiff herein, Allen was the sole shareholder of Cimble Corporation; ii.) his failed efforts as he has tried to retain council; iii.)  his actions and the results of his actions to try to get Cimble Corp. to file this suit; iv.) and the sworn certified allegations he makes in this complaint, he has written, read and certifies under oath they are all true.  (SEE Allen's affidavit Ex. 19)

10.      All the elements of Defendant's conspiracy's crimes and frauds in the stock transaction are now fully discovered, ripe and ready for trial. They require no further briefing and no more discovery in SHERMAN or BEAUMONT, if necessary.  Allen's claims may be compulsory counterclaims in SHERMAN except that Defendant co-conspirator TREVOR ZINK is not a party to the SHERMAN lawsuit.  Zink should be judiciously joindered in the SHERMAN immediately out of fairness and justice for Allen, and to prevent prejudice to Allen because Zink is slated to be a hostile witness. This fact makes having Joinder of Zink critical to face Plaintiffs claims on evidence already in that record, and doubly important to Plaintiff Allen, it is time this sham scam ended.  Plaintiff has previously attempted to file these exact claims in the SHERMAN court however; because he was represented by council unwilling to file them, he tried filing them himself; Pro Se, on Oct. 23, 2019, but the court clerk rejected them.  For these reasons, this lawsuit in BEAUMONT should be joined together with that lawsuit in SHERMAN and then both will be expediently tried by the district court in SHERMAN. This makes sense. The SHERMAN lawsuit is now ripe and at the MSJ stage.  This lawsuit is/was born out of that discovery, both written and newly discovered criminal acts where Whiteside admitted to conspiring with Zink in his deposition testimony evidence.  Evidence detailed below that Plaintiff Allen actually obtained in his discovery from the SHERMAN lawsuit. These cases

3

should be joined together and be tried together in that suit. The case has pended since 2017.

11.     Another reason this lawsuit should be immediately JOINED with the SHERMAN lawsuit is because both suits revolve around and are based on interpretation of the exact same evidence Plaintiff details in the claims below.  Plaintiffs claims of fraudulent behavior are clearly supported by Texas Laws, several California Laws and many Federal Laws.

12.     The facts are <u>undisputed</u> by the evidence and admissions, Zink made sworn a statement (Exhibit 01) and wherein Whiteside swore that in both his depositions, that and he Zink broke California Law multiple times they and committed forgery and wire fraud in a stock transaction, all the while intending to induce actual reliance on their material fraudulent written misrepresentations in the SPA/MOU, scamming Plaintiff Allen, who did actually rely on them.

13.     It is clear, joining Plaintiffs claims herein to the SHERMAN suit now, would not prejudice anyone else, and should not cause any delay in the SHERMAN suit and trial. Non-party Zink is fully informed. ZINK actually filed a lawsuit against Plaintiff, and other's in a California suit alleging the same facts for Whiteside in 2016. That suit was rejected by the California Superior Court. **(see EX.13)**

14.     Zink has given statements in the SHERMAN lawsuit. **(see Ex.01)**  Joining Plaintiffs claims herein, with the SHERMAN lawsuit, will permit the courts exercise of judicial expediency actually disposing of two inter-related complaints at the same time in trial and possibly Plaintiff can recover his fees if proven, from all the alleged guilty, necessary, parties.

15.     Plaintiff, Allen, is in possession of all the crucial evidence and sworn testimony that he believes is necessary to affirmatively prove his fraud and conspiracy claims to a jury now, no further discovery needed.  Allen can prosecute these claims hereunder in BEAUMONT and more expediently in the SHERMAN lawsuit now pending because his claims are based on the exact

same few documents of evidence at the center of that suit, and the law, documents  SPA, LOC
and MOU, which Plaintiff Allen alleges are civil conspired forgeries and wire frauds are at issue.

16.        Cimble Corp. has no money but is still a duly reporting, organized, non operating Texas
entity, a Texas sub-S Corporation. Cimble and Allen are represented in SHERMAN by legal
counsel Steve Abbott, whose invoices are now in arrears. (After 3 years, Allen is broke and
unable to pay more money to defend the sham SHERMAN suit) Abbott, who tried to withdraw
in January 2020 is still representing Cimble and Allen (and will at trial in SHERMAN). He is
continuing to defend Allen, Cimble and Barrett reluctantly but diligently, however, he  is
unable/unwilling to work more uncompensated time without significant money to file these
offensive claims. For these reasons,  he has refused to timely file Cimble and Allen's legitimate
counterclaims (claims filed herein as claims in Sherman) in the SHERMAN lawsuit where they
belong. Therefore, Allen feels he must act to represent himself; he has been prejudiced in the
SHERMAN lawsuit  by the court clerk for refusing to allow Allen to file his counterclaims last
October 23, 2019.  The clerk returned them unfiled because Allen was represented in
SHERMAN. Allen has now been forced to file his (compulsory counterclaims) claims, here in
BEAUMONY in this venue to preserve the evidence from the statue of limitations.

17.        Allen is now representing himself herein Pro-Se, and now seeks leave from this court to
join both of the lawsuits together and adjudicated them together in the SHERMAN lawsuit with
the claims of this lawsuit combined as Compulsory Counter Claims in the SHERMAN lawsuit.

## FACTUAL BACKGROUND OF CLAIMS

## A. WHITESIDE AND ZINK INDUCE ALLEN TO SIGN FORGED STOCK CONTRACT

18.        Magistrate Priest-Johnson SHERMAN court, has instructed Plaintiff thru his attorney to
file this lawsuit in BEAUMONT today and then she suggested I ask the BEAUMONT court for

it to be joined with the pending suit SHERMAN **Civil Action No. 4:17-cv-404.** That lawsuit, now pending in the USDCEDT SHERMAN DIVISION (the "SHERMAN" suit) is ripe and set for trial March 02, 2020.

19.     Allen alleges Dk.70 Ex. 1&2, in the SHERMAN suit and (Exhibits 16) here are all forged and misrepresented frauds as a matter of California Law.  Whiteside is a fraud and could not legally sign them.

20.     Allen's cancer treatment combined with secret nature of Defendant's fraudulent representations emanating from the secret conspired scam perpetrated and executed by Defendants thereby prevented Plaintiff Allen from finding the NEWLY DISCOVERED EVIDENCE sued upon herein until Feb. 07, 2019. Allen now alleges his fraud claims with criminal and civil conspiracy, forgery, wire fraud, and fraud in the forged Stock Purchase Agreements which are the central exhibits at the center of the SHERMAN suit. These documents were procured by fraud. Frauds that were only first discovered by Plaintiff Allen in Defendant Brian Whiteside's personal and Autoficio 30b(6) depositions Feb 07-08, 2019, which occurred just before Allen discovered he was stricken with cancer and the case was stayed for his treatments.

21.     Allen alleges the following fraud, forgery and conspiracy allegations were admitted to against all three Defendants including newly discovered Trevor Zink ("Zink") Esq.  Whiteside and Zink together, if the allegations are proven will owe Plaintiff Allen monetary culpability of at least $4.2M for their alleged frauds detailed in both this lawsuit and in the SHERMAN Lawsuit. Both now pending.  There was a previous fraudulent Autoficio lawsuit fraudulently filed in California by Zink, against Cimble and Allen in 2016.  Plaintiff now seeks justice for the newly discovered, underlined, underlined committed against Cimble, that caused Allen to make decisions based on Defendants representations that killed Cimble, injured Allen.

22.    All crimes committed by Defendants, attorney Trevor Zink, and Brian Whiteside <u>in an effort to hide the alleged forgery and wire frauds</u> they committed outside the Kapexia and Autoficio L.L.C. veils.

23.    Zink, was Kapexia's former attorney, but according to testimony has no authority to act in the name of the Kapexia L.L.C., or Autoficio, L.L.C., at any time, or he could have signed the agreements at the heart of this matter, but HE DID NOT. Evidence shows ZINK had given <u>his vote in Kapexia by proxy,</u> to Joseph Perez. (**See Zinks Statement in Exhibit 1**)

24.    Trevor Zink, Esq. is an unethical practicing attorney in San Jose California who allegedly engineered, planned, produced the documents and according to testimony conspired with Whiteside in every way, all in an effort to induce a stock purchase contract scam and multiple crimes against Plaintiff Allen and his company Cimble on August 07, 2014.

25.    Zink should not be allowed to act as an attorney in these lawsuits in which he will certainly be called as a witness. Zink will be called as a witness in both cases because he is a member and shareholder of Kapexia, L.L.C. and as their attorney, he allegedly FORGED the agreements at the center of this matter.

26.    Zink performed contract work for Autoficio, L.L.C., He also did work for Kapexia, L.L.C., the California L.L.C. that Cimble exclusively contracted with to buy the Cimble stock (Whiteside wants) in the second set of agreements which were also produced by Trevor Zink but signed by Whiteside.  Allen alleges these are outright forgeries. (SPA,LOC,MOU) (Exhibit 16).

27.    WHITESIDE in his sworn deposition admitted ZINK unethically acted as legal counsel for Kapexia, L.L.C., Autoficio L.L.C. and Brian Whiteside himself at the same time (all 3) and also in Zink's own conflicted self interest at the same time.  This is unethical and illegal.

28.    Zink admitted in his sworn statement, and was identified in writing by other Kapexia members many times as being a (non-voting) silent member of Kapexia L.L.C., but telling, <u>he is currently a profit sharing partner of Autoficio</u>, L.L.C. (<u>which did not exist on August 07, 2014</u>).

29.     Plaintiff Allen alleges the reason why Zink doubled crossed Kapexia members and Cimble was because he was bribed by Whiteside. They obviously conspired on August 07, 2014. Otherwise, if Zink had any real authority, it would have been incumbent on HIM to sign, why didn't Zink sign for Kapexia? Instead he knowingly committed criminal frauds, called Allen and lied, convincing Plaintiff Allen to sign with non-member Brian Whiteside to commit forgery, wire fraud, statutory fraud and conspiracy under California Law. (See Exhibit 16)

30.     There is no other explanation but for fraudulent reasons. Especially since Joe Perez, the authentic Kapexia Manager and CEO according to the August 04, 2014 (**See Exhibit 07, § 3.1(B); and §3.9A**) of the unsigned Kapexia Operating Agreement Perez provided to Allen. Both still show how Perez as the Kapexia's CEO and its sole Manager on August 08, 2014. Before the forgeries, Perez had previously sent Allen legitimately signed documents. Legitimate Documents Perez signed and delivered to Allen late on August 06, 2014.

31.     ZINK prepared (as an attorney) and delivered (as a member) the forged documents to Allen electronically by his email. This is Whiteside's sworn undisputed testimony and position in the SHERMAN lawsuit. The stock purchase documents were already bearing Whiteside's forged title above his signature when Allen received them. He did this as part of the Civil Conspiracy scam he and Zink cooked up overnight on 8-6-2014 and then executed it early on August 07, 2014. This fact is undisputed, in that WHITESIDE admitted it 9 times in his sworn depositions on Feb. 7-8, 2019

32.     Whiteside admitted 9 times was <u>NOT</u> ("never") <u>a member</u> of Kapexia and <u>12 times that he was not ("never") its manager</u>, and <u>1 time that he NEVER had, "**never invested 1 penny in Kapexia"**</u>. Whiteside's signature (placed on the SPA, LOC and MOU by ZINK) was part of his and Zink executing a undisputed conspired fraud to induce Allen to sign MORE documents.

33.     It is UNDISPUTED Whiteside was not a Kapexia member, not an investor and not it's manager or it's agent under the Laws of California, as he clearly admitted in his depositions,

8

Kapexia members did not take the required recorded vote for him to have any authority. He has produced nothing. There is no legal basis for Whiteside to have his signature on all the documents that Zink emailed Allen. No legal basis for validating the documents which are central to both of these lawsuits. They are held ineffective against Cimble Corp or Allen because they are signed by an interloper who was misrepresented as the manager when he was NOT, and he is directly responsible for the direct destruction of Kapexia and Cimble, Mr. Brian Whiteside.

34.    Allen was further hoodwinked by Zink in a telephone call on the morning of August 07, 2014. Zink misinformed Allen, induced him into believing, relying on and acting on the fraudulent representations and the hidden scam Zink and Whiteside were conspiring to execute.

35.    Conversely, Allen was unaware Whiteside was not authorized to sign the SPA, LOC and MOU until he admitted to committing the frauds in his deposition 4 years later. Because of the undisputed hidden nature of their frauds, and therefore according to California Statutes and Laws, Cimble and Allen can construct the SPA, LOC and MOU against Kapexia, holding it to its fraudulent representations and representatives and seeking damages there from.

36.    In the SHERMAN suit Whiteside represents Whiteside was acting as a [non-signatory] "agent" for Kapexia contrary to what is described under California Law. New evidence now suggests and Plaintiff alleges that Whiteside was actually disseminating fraudulent financial and membership information about Kapexia and its finances that were misrepresented to the general public which included Cimble, Barrett and Allen.

37.    According to California L.L.C. Laws, Allen and Cimble can construct the terms of an unsigned Kapexia Operating Agreement against Kapexia and its representatives including Trevor Zink who wrote and provided it to - Allen.

38.    ALLEN relied on, trusted and believed Kapexia attorney Trevor Zink.    When Zink called Allen and then endeavored to induced Allen to re-sign more documents on the morning of August 07, 2014, [(after already having signed a full set with the legitimate Kapexia Manager

*Joe Perez, the prior evening*)] It is UNDISPUTED ZINK WAS THEN ACTING ON BEHALF OF UNDERLINE WHITESIDE, without regard for Allen, Kapexia or Cimble. It is undisputed ZINK did not actually have authority at that moment to authorize Whiteside to sign and not commit forgery. Whiteside admitted in deposition that he signed documents he knew he had received no agreement or authority from Kapexia to execute because "he thought it would help Cimble". **(See Aug 12 email trail EX. 17)** This was unmistakable admitted fraud in a stock transaction against Allen.

39.    It is also undisputed that the authority to sign for Kapexia was never granted to Zink or Whiteside. That authority belonged to Joe Perez alone. Kapexia never did have a recorded vote of 100% of its members.  In this case, this vote is required by the California L.L.C. statutes.

40.    Since, ZINK emailed the fraudulent documents direct to Allen, all of them, with Whiteside's forged signature already printed on them representing him as the "Manager". Based on Zink's inducing words on the call and in the titles Whiteside used in the fraudulent agreements themselves, Allen presumed they were sent on behalf of Kapexia, L.L.C.  They apparently were not.   New discovered undisputed evidence found Feb. 07, 2019, from Whiteside's deposition testimony now clearly suggest that in reality all the other named Kapexia members did not know what Zink and Whiteside were up to until well after the scam was already fully executed. Those other Kapexia members have recently confirmed this fact in filed sworn affidavits filed in SHERMAN also.

41.    Under well settled Texas Law ZINK cannot represent himself or anyone else in this case. Zink most certainly should and will be called as a FACT witness.  Zink should be barred from acting as an attorney or representing himself in this federal case.

42.    Zink (a non party currently in SHERMAN) will not be prejudiced by his joinder herein or by the joining of this lawsuit in lawsuit in SHERMAN. Zink has given statements and assisted Plaintiffs in the SHERMAN lawsuit, Zink is well versed in all the facts of the SHERMAN

lawsuit affecting him, because he brought the first California lawsuit for Whiteside, he wrote the pleadings, and still assists Whiteside today in effort to hide their forgery and wire fraud. Zink should have known and been on notice; it was only a matter of time until he would be properly identified as a necessary party in the SHERMAN lawsuit.

43.    Allen while initially representing himself Pro-Se in SHERMAN. During that time, Plaintiff Allen has demanded to the court that Trevor Zink be joindered by the SHERMAN court ever since the SHERMAN suit was initially filed and Allen sought dismissal. (which the SHERMAN Court previously denied) ZINK is today an ABSOLUT necessary party for both lawsuits. If ZINK is not made to be present to answer for his well pled participation in these frauds then Allen and Cimble will surely be forever prejudiced, denied fair trial and fair resolution.

44.    Allen will be representing himself and his personal financial interest in Cimble Pro-Se in this BEAUMONT suit. Allen now owns 92.86% of the Cimble Corp outright. Allen has conferred with several attorneys about representation but he nor Cimble can pay for representation, Allen just survived cancer, is unemployed and has not earned money in over two years, so to preserve his evidence, Allen is filing this suit on February 06, 2020 which is less than one year after Allen discovered the explosive New Evidence exposing Whiteside and Zink's civil conspiracy's to commit frauds and forgery and wire frauds against Allen and Cimble.

45.    Particularly after many hours of first misrepresenting the true facts on the deposition record, Whiteside finally admitted he was never a member, never a manager, never an agent, and never an investor in Kapexia, L.L.C. Nothing but an interloper.

46.    Whiteside also admitted on the deposition record on Feb. 07-08, 2019 that he had indeed committed a four years long effort at stringing along Allen with his and Zink's frauds, admitting conspiring with Zink, frauds that were focused on Cimble and Allen. (**See Ex.04; Indemnity**)

47.     Whiteside further admitted another HUGE misrepresented fraudulent fact on February, 08, 2019. The truth is that "Kapexia and Autoficio were NOT and never were one and the same company". Whiteside first made multiple false misrepresentations, again, angrily answering on the deposition record for two days that they were for all purposes "they were one and the same", before finally he admitted, face with hard facts, that this representation was false and the real truth is Kapexia and Autoficio were not the same companies, they have different ownership, and are NOT RELATED in anyway.

48.     This VERY MATERIAL false fact was used repeatedly on official documents, threats, and in several conversations Whiteside had with Allen and Cimble over the last four years. These are huge fraudulent facts for which Cimble suspected, but did not have actual proof of, until Whiteside admitted it on record, Feb 08, 2019. This was admission of a MATERIAL FRAUD that was supported four years by hundreds of lies told by Trevor Zink, Brian Whiteside and Whiteside's other lawyer (Carr McMullan; Bleacher) to Allen for many years. This lie was done to further the conspiracy by all of them, to conceal the original criminal forgery.

49.     Allen has relied on these lies for 5 years, relied enough to actually make many important financial and business decisions for Cimble based in total reliance on them.  Important decisions that ultimately, totally destroyed CIMBLE financially AND they also destroyed KAPEXIA.

50.     Allen had to watch as his undisputed $4.2M dollar company died helplessly all behind these fraudulent representations designed to cover their forgery.

51.     Allen has had to defend fraudulent lawsuits and fraudulent accusations made by Zink and Whiteside's continuing repeatedly over the last four years. These were ACTUALLY part of their continuing string along FRAUDS being executed on Allen.

52.     The truth is apparently Whiteside was holding the August 07, 2014 forgery over ZINK's head like a hammer, thereby making Zink cooperate and do unnatural things for a lawyer, by conspiring with Whiteside. They both further conspired to continue to lie about the forgery and

how it affected Kapexia, while they endeavored to keep it unknown by Allen while they tried to mitigate it over the last four years.

53.    No one ever told Cimble, but Joesph Perez tried, after a dinner at the Platinum Hotel, on Nov. 05, 2014, at the SEMA Show 2014. Perez informed Allen about Zink and Whiteside's scam. Perez informed Allen in front of Allen's wife and a witness/associate co-defendant Paul Barrett. Perez said that "Whiteside and Zink had screwed Cimble bad" and they had "screwed Allen's eyes out".

54.    Perez told the group that "Allen needed to check the contracts (SPA and LOC) real good", because he has heard there was bad stuff in them" ("forged?") Then, after Allen fronted both Zink and Whiteside about the frauds, both Zink and Whiteside denied Perez' story and both continued to mis-represented the truth to Allen.  In fact, they doubled down and kept going with their continuing frauds and lies about how "Autoficio/Kapexia are magically now one and the same company, [so Plaintiffs Allen's concerns does not matter]" A fraudulent claim of merger, one that Whiteside finally admitted was pure fraud the first time on the record in his Feb 08, 2019 deposition and he also conceded that they could "NOT LEGALLY ACCOMPLISH MERGER" (the merger) without Joseph Perez (Kapexia's real founder) agreeing and he did not.

55.    The SPA signed on August 07, 2014 contains specific language providing for reimbursement of all fees associated with interpreting or enforcing the SPA to the prevailing party.

56.    Perez who unbeknownst to Cimble or Allen was furious with Zink, and was refusing to cooperate with Whiteside or Zink at all. This was because he was aware of their frauds against him and his company Kapexia and frauds against Allen and more importantly Cimble Corp.

57.    Whiteside and Zink set out to convinced Allen and Cimble that Perez, was simply crazy, and fraudulently represented Autoficio and Kapexia were in fact legally one and the same entity

as they wrote in documents many times. As it turns out Perez was 100% right, and not crazy, they were not "one and the same company", they did lie and forge the SPA without Perez's OK.

58.    Allen actually counter signed **(see Ex. 16)** documents with who he thought was Kapexia L.L.C., which are the forged stock contracts Kapexia attorney ZINK sent to Plaintiff Allen early on August 07, 2104, these docs are the central documents in both this and the SHERMAN lawsuits.

59.    Whiteside's signature on them as the "Managing Member" or "MANAGER" is outright fraud under the California L.L.C. Law because Kapexia was actually formed as a "member-managed" L.L.C. Both Zink and Whiteside testified that it has no signed Operating Agreement; no recorded 100% membership vote on the manager matter, both are required corporate acts in order to change Kapexia from a "member managed" to a "manager managed" L.L.C. Neither has ever happened. Kapexia could not have legally enlisted Whiteside as a manager or an agent.

60.    A recorded vote is required to ratify an L.L.C operating agreement or simply to appoint a manager or an agent. An agent can have very limited clearly defined non-signatory responsibilities without a signed Operating Agreement and cannot sign for it under California Law.

61.    Cimble is a lawfully organized, fully reporting company and in compliance with the SoS, but is a non-operating entity that has no money, has no revenue, and is of limited value since its revenue producing assets are obsolete today. Therefore, Cimble cannot hire council to bring this action and is relying on Allen, nor can it pay the attorneys fees for 3 years of past representation in the sham related suit now pending in the USDCEDT SHERMAN.

62.    Allen has already incurred hundreds of thousands of dollars in legal fees representing himself and Cimble in the SHERMAN lawsuit, which it cannot pay. Cimble believes the SHERMAN suit is a sham suit filed by Defendant Whiteside and Autoficio used to cover up the crimes alleged herein that were committed by Defendants Whiteside, Zink and Autoficio.

63.    Further, Allen is the actual injured person because of Defendants false and illegal acts and false representations that were made specifically to induce Plaintiff Allen on August 07, 2014, and made in writing!  The truth of the matter of which Plaintiff Allen was not privy, and could not easily discover on his own, before discovery and the depositions.

64.    Both Zink and Whiteside had special knowledge, special knowledge that was material and misrepresented to Plaintiff Allen. Special knowledge about their false representations that Whiteside was the legal Kapexia Manager, when he was not, both knew their scheme was wrong and it was illegal, both understood and were conscious and thought about the ramifications of the misrepresented material facts and they knew this fraud would severely injure Allen and Cimble, but they forged into it anyway, and then, they HID TRUTH from Allen FOR FOUR YEARS.

65.    Allen relied on Zink and Whiteside's false representations in agreeing to re-sign the new set of documents on August 07, 2014 bearing Whiteside fraudulent title and illegal signature.

66.    Allen had already signed a full set of the exact same documents the night before on August 06, 2014, with Joe Perez. Perez who is still the legitimate member manager of Kapexia. Allen was expecting for Kapexia not Whiteside to send the agreed upon money on Aug 07, 2014.

67.    Zink had special knowledge as a California attorney who had just written the unsigned Kapexia Operating Agreement that Whiteside was not the Kapexia manager and that he had not signed the Ops. Agreement.  There are no other facts needed to prove the fraud, it happened. No further discovery is needed to prove their false representations and facts of the alleged forgery.

68.    The false representations were made to Allen in writing just minutes after events described by ZINK during a well documented telephone call in which Allen obviously took in reliance.  Zink's representations were all false.  Defendants conspired to defraud Allen before the call and knew the facts they were telling Allen were false and were clearly made to induce Allen to RE-SIGN (FALSE) DOCUMENTS AGAIN, Allen relied on the representations and signed.

69.     ZINKS's email used in delivery of the fraudulent contracts, and the language contained in the scheme documents are all contained in this one email. **(see Exhibit 02)** It will fulfill each element of Civil Conspiracy, Forgery, Wire Fraud and Stock Fraud required to convict a bad actor. This email admits and reveals a fraudulent scheme executed by Defendants in a stock purchase transaction which went terribly wrong on their end, right after the execution of the agreements, but of which, Defendants made no mention to Allen or Cimble for over four years, until late in Brian Whiteside's Autoficio 30b(6) deposition, just last February 8th, 2019.

70.     Defendants knew Allen had personally invested over 1 Million dollars in guaranteed loans for Cimble before the Defendants scam Aug. 07, 2014 forgeries and false representations.

71.     Defendant's made critical false representations to Allen which were never corrected. Defendants pursued over 50 months of fraudulent representations, ultimately causing Allen to make protective decisions that destroyed Cimble as a going concern, and as a result created this cause of action.

72.     Allen has been stricken sick for the last 24 months. First he had heart problems and as soon as they were adequately dealt with, he discovered prostate cancer in January 2019.  The SHERMAN case was stayed in February 2019 until August 10, 2019; Allen had radical robotic prostate cancer surgery on August 23, 2019. The Court is SHERMAN stayed the case again until October of 2019 at which time the case has proceeded.  Allen was well enough following recover from cancer surgery to sit for his depositions on November 19-20, 2019. Discovery in the SHERMAN suit closed on November 20, 2019 before Allen could get counter claims filed.

73.     Allen could not have filed these claims any faster because Defendants have continuously alleged to Allen in writing, and to the Federal court **(see Dk. 01;SHERMAN)**, ZINK filed **false** sworn statements in California superior courts and in the federal court in SHERMAN, **(see Ex. 18)** all fraudulently representing this untruth out of necessity for capacity to sue,  otherwise they lack any standing or authority to sue Allen, and Cimble. The statement

that, "Autoficio beneficially owns everything owned by Kapexia" (line 2 of all their complaints) is a lie. It is another example of material false statements made by Zink and Whiteside to purposely intentionally injure Allen, lies made repeatedly to for Allen to rely on for over four years, and the facts are lies that Brian Whiteside ultimately admitted on Feb. 08, 2019 that NONE of that was or could be true, "It was all untrue lies".

74.     This is a very important fraud because it pretends to lend actual real fraudulent credibility to Defendants actual false statements made in the SHERMAN lawsuit and they are using it to falsely support their claims to fraudulently appear to have the <u>valid legal capacity</u> to bring the SHERMAN lawsuit, which they DO NOT.  This malicious fraudulent statement was made by Trevor Zink and <u>IS</u> the SECOND LINE of every court document filed by Zink and Whiteside in federal and California, and in the federal court in <u>SHERMAN.</u>  This lie is now proven false as an undisputed fact, it is <u>NOT TRUE</u>. Whiteside owns NOTHING which he admitted so in his deposition. Without it, there is no capacity or subject matter jurisdiction; the court must dismiss Whiteside's atrocity against Allen.

75.     It is NOW UNDISPUTED that Zink and Whiteside  are using this false statement, one they just made up by themselves, without benefit of truth or validity, to falsely show their capacity to sue Allen and Cimble in these federal courts.  Just another example of their frauds.

76.     Whiteside and Autoficio intended to, and are currently DEFRAUDING the SHERMAN court and thereby gaining improper capacity to sue Allen and Cimble based on Whiteside's own clearly identifiable falsely represented title and signatures. Signatures that are under fraudulent "manager" titles which Zink forged on the SPA, LOC and MOU.  This was used to induce Allen.

77.     On November 27, 2017 Trevor Zink made the following sworn statements to the SHERMAN court **(see Trevor Zink's Sworn Statement is Exhibit 1)**. Zink states below;

- On May 01, 2014, I filed the articles of organization for Kapexia….see Exhibit 1

- On May 21, 2014, I filed a statement of information for Kapexia….see Exhibit 2

- There is no operating agreement for Kapexia and the members of Kapexia have never agreed to an operating agreement for Kapexia.

- On **August 26, 2015**, I sent an email to Joe Perez stating "Effective immediately I am revoking my proxy to you" **[over a year _after_ the documents in this suit were signed _Trevor Zink has been requested to produce the August 26, 2015 email but he refused_.]**

- On June 06, 2017, I authorized the law firm of Griffith Bates Champion & Harper, L.L.P. to file claims **on behalf of KAPEXIA [not Autoficio or Whiteside]** (emp. add.) against Cimble Corporation, Alvin Allen, and Paul Barrett in connection with the investments in Cimble Corporation. [ITS UNDISPUTED ZINK LACKS AUTHORITY TO DO THIS] (emp.added)

I declare under penalty of perjury the forgoing is true and correct and that this Declaration was executed on November 17, 2017, /ss/ Trevor Zink  (**see DK.44-2 SHERMAN for a filed copy ( also see EX. 1 attached**)

78.    Whiteside now claims he was not a manager but he was an "agent" for Kapexia, but he fraudulently signed as the Kapexia's "Managing Member" and not as an "agent" which is distinguishable from "manager" under California Law. In Kapexia's case as a member managed company, neither one is legally permitted under the California L.L.C. statutes and Laws.

79.    Autoficio, L.L.C., is a complete stranger to the Cimble-Kapexia deal and was otiose, and now brings fraudulent claims of capacity to sue Allen in SHERMAN.  Plaintiff alleges only **Kapexia L.L.C.** (managed by majority member Joe Perez), as is named in the Share Purchase Agreement (SPA) owns the 7.14% of Cimble common stock.  Not ZINK, not Whiteside, and not Autoficio, L.L.C.; just Kapexia, L.L.C.  Autoficio is being sued in this instant suit herein because of the frauds it has perpetrated against Allen and Cimble since it was fraudulently introduced into the deal (after August 20, 2014,) where it has no agreements or business with Kapexia, but it

outrageously sent Cimble $100K of money for Whiteside again for no other apparent reasons but fraudulent reasons.

80.     After discovery in the SHERMAN suit, neither Whiteside nor Autoficio  produced even one scintilla of evidence like a legal contract or agreement creating any obligation, merger or any connections what so ever linking Whiteside or Autoficio, L.L.C., **to** Kapexia, L.L.C.  Further, Whiteside testified in his deposition he had "never invested even one penny in Kapexia L.L.C.".

81.     It is now and undisputed fact, that Autoficio and/or Brian Whiteside are not "beneficial owners" of Kapexia, L.L.C.  They do not own the 7.14% Cimble Stock, nor do they own any legal right in the Exhibits (**DK70; EX. 1 – 2 in SHERMAN or see Ex. 16**) with which they have unlawfully brought this suit.  Further proof is they actually did try to buy them from Joe Perez on February 12, 2016.  They simply failed to pay to purchase them.  **(Carr McMullan?; Bleacher legal letter)**

82.     Whiteside testified in his deposition that "he" received permission to 'sue' defendants Allen and Cimble from Trevor Zink.  Trevor Zink has not demonstrated to the court that he has capacity to sue or has authority to grant Whiteside capacity to sue.  Zink has dodged deposition so far. **(Ex.14, Pg. 83-84)**

83.     Trevor Zink could not make unusual decisions for Kapexia, L.L.C., decisions out of its normal course of business, by himself. Zink did not get Kapexia shareholders on record voting for it. They didn't vote.  Joe Perez didn't vote.  Whiteside has produced <u>no evidence</u> of an authorizing vote.  Brian Whiteside testified in his deposition that there were no votes, agreements or any confirming documents. Just lies.  Zink also confirmed this in his above sworn statement.

84.     Defendants Autoficio and Whiteside have ZERO CAPACITY to be suing before the SHERMAN court. The evidenced of Plaintiffs Exhibits in SHERMAN are merely voidable forged contracts that ONLY by Cimble and can enforced upon Kapexia by their face. The SPA and LOC intentionally <u>excluded</u> everyone but Kapexia and Cimble. **(see SPA, Ex. 16-1 § 4.2).**

85.     It is an undisputed fact that Autoficio did NOT even exist on August 07, 2014.

**B.**          **CALIFORNIA REVISED L.L.C. STATUTES AND LAWS**

86.     Kapexia, L.L.C. ("Kapexia") (*see* **California L.L.C. Statutes 17703-1; in Exhibit 6**) was, organized as a member-managed L.L.C.under CRCS 17703.1. It says LEGALLY "only a **member** can legally sign for a member managed L.L.C. like Kapexia. Whiteside, a **non-member** falsely maliciously signed as "Kapexia **Manager**" four times to fraudulently induce Allen to sign the documents with him so he could interfere with the Kapexia-Cimble deal terms.

87.     Under California Corp. Statues, Whiteside's signature on a Kapexia L.L.C. contract is worthless to hold to Cimble. Neither Whiteside, Autoficio nor Zink have any capacity to sue in SHERMAN based on their own frauds.  Whiteside **admitted** in his deposition 08FEB2019, that he was never part of Kapexia and that he had **NO** authority signing for Kapexia. STILL, he signed 4 forgeries and then sent Cimble **$425K directly around Kapexia**, of his own free will, with no obligations or commitment to, or permission, from Kapexia or Cimble to do so, none, either signed or otherwise.

88.     Whiteside had no reason or commitment to do this except for committing a scheme to defraud Cimble and to gain an unfair advantage which he is using here today claiming capacity to sue Allen because of his own stupidity.  Whiteside by executing his fraudulent plan to ensnare Cimble and Allen and sending Cimble $425K directly, did so, and is now claiming an unfair advantage from his own stupidity in doing it. **(see Ex. 3 Pgs. 14-17 & 20-21; ).**

89.     There is no written contract or binding agreement, written or oral or otherwise, between Autoficio, and Allen or Cimble produced in discovery. It is an undisputed fact and all testimony is that Kapexia never had a signed Operating Agreement. There is no agreement where Allen consented to Whiteside's fraudulent "manager" role.

90.     Autoficio was created to obfuscate and help cover forged frauds that Whiteside and Zink committed, to induce Allen, to bind Cimble with Kapexia, L.L.C., in four forged Agreements.

91.    Allen <u>recently</u> learned at Whiteside's Feb 2019 deposition that co-conspirator Trevor Zink Esq., actually endorsed documents for Brian Whiteside, Zink actually **PLACED** Whiteside's digital signatures on the 4 allegedly forged documents including a Non Compete delivered by Zink, to Allen, by electric wire, on August 11, 2014.  Zink is a practicing attorney, knew he was conspiring with Whiteside to defraud Allen by forging and uttering false titles and Whiteside signatures to Allen on false stock purchase documents and others documents. Zink and Whiteside used digital signatures in a conspired scheme to falsely induce Allen to rely on their fraudulent representations, which he did, and he was induced to influenced his decisions into a corporate stock transaction with Cimble stock on 07AUG2014.

92.    Zink purposely obfuscated and deceived Allen by uttering four forged and false stock purchase instruments to induce Allen's legitimate signature. A forgery and stock purchase scheme, cooked, conspired and executed by inducing Allen into entering a forged Corporate Stock Purchase Agreement ("the SPA") on August 07, 2014. The same SPA Whiteside conspires to fraudulently sue upon in this suit with non party Zink.

93.    Trevor Zink Esq., has unethically, maliciously, **weaponized his law license in efforts to prevent** Plaintiff Allen from discovering and disclosing these tortious, unethical acts, forgeries and frauds involving Cimble stock as described and detailed herein. Trevor Zink, Esq. and Whiteside have deliberately maliciously conspired to injure Plaintiff Allen and have literally killed Cimble Corp.

94.    These actions of Whiteside and Zink destroyed Allen's $7.25 MM Company Cimble. By their deliberate fraud schemes.  Their schemes were advanced by the consummated forgery of the SPA, LOC and MOU with Whiteside's bogus titles and signatures, both are criminal acts they both knew were wrong.

95.    Whiteside fraudulently signed as Kapexia "Manager" making the agreements Voidable for Cimble because Allen was mislead (lied to) by Zink and Whiteside immediately prior to

signing them. Zink (Kapexia's lawyer) wrote documents to Allen indicating that Whiteside had become the "Kapexia Manager", which was false.

96. The 4 agreements the SPA, LOC, MOU and the August 11, 2014 Non-Compete, when construed against Allen and Cimble should be void for the identity theft, fraud and forgery on their face.

97. Zink, called Allen early, before Allen could return documents signed legitimately and lawfully by Joe Perez. Trevor Zink, Esq. asked Allen to permit "novation" of the forgeries. Zink called ALLEN and lied, telling him that Brian Whiteside was now "the official MANAGER" of Kapexia and that Whiteside "signed and fully funded" the "8-4-14 *Kapexia Operating Agreement"*. (**see KOA Ex. 07**) which was another lie.

98. Allen countersigned the SPA fully believing that Whiteside's signatures were real and that he was INFACT the new Kapexia "manager". Allen relied on their false representations and omissions. Whiteside was <u>not</u> a manager. Zink's statements were false and made to <u>INDUCE</u> Allen to sign a new set of FORGED documents, <u>going around Joe Perez</u>. Zink knew these were false statements when he conspired to make them, with conscious thought, Zink knew Allen would rely on them and would be badly injured. Whiteside testified in deposition that he had lied and factually was <u>NEVER</u> a Kapexia MEMBER or more importantly, NEVER it's MANAGER. (**see Exhibit 3, Pg. 14-17**)

## C.           <u>THE FORGERY AND WIRE FRAUD</u>

99. Attached to following email are three of the four forged Stock Agreements Zink wrote. The following email was written and signed by Kapexia attorney and silent member Trevor Zink Esq., who emailed the forged SPA, MOU, and LOC to Allen, for his signatures at 11:38 AM on Aug. 07, 2014, in the name of Kapexia. Subject: *Cimble-Kapexia **Signed** Documents*. It is addressed to Cimble reps "Paul [Barrett] and Chuck [Allen], Zink: (**See Zinks email Exhibit 2**)

22

*"Attached are the documents signed by Brian. During* [o]*ur[1] call this morning, we* **[Zink and Allen](emp. add.)** *decided to have Brian sign all the documents, so I made those changes and obtained Brian's signature. Please note that we[2]* **[Zink and Whiteside?](emp. add.)** *added one item to the end of the roles document, specifically, that Kapexia will manage the financials and books/records."*

99.      Superscript 1 above is Zink is referring to the phone call (he) Zink placed to Allen just prior to sending this email. Superscript 2 is Zink referring to himself and Brian Whiteside.  This email is the execution of Zink's and Whiteside's scandalous act against Allen and Cimble which is contrary to and against California law. This sending of this email to Allen constitutes wire fraud and forgery.

100.      Zink had no authority to disregard the agreements Perez signed the evening before, or to make the above documented fraudulent material changes to the signed agreements, and then to ask Allen to re-sign them. This is their initial execution of their scam on Allen.  In the SHERMAN suit Zink nor Whiteside (as Plaintiff) after three years, neither have produced any documents showing a required written vote occurred. This vote never happened but was REQUIRED by California L.L.C. Revised Statutes, which is the California Law for L.L.C.'s, as recognized by Texas, it's required to legally make Whiteside a fiduciary, legally capable of signing for Kapexia.  This NEVER happened.

101.      It is undisputed they have nothing to legally produce, not a scintilla of evidence because as Whiteside testified in his sworn deposition, it did not happen.   Zink and Whiteside both testified Kapexia, L.L.C., never had a signed Operating Agreement, nothing!

102.      The rest of Kapexia's membership testified in their sworn statements that they were not made aware of the scandal and did not know about this scandalous re-signing act which Zink committed with Whiteside until well after it was done. This scandalous act

eventually blew the whole deal apart behind the scenes and it financially destroyed Allen's entire company Cimble Corp. because of these unauthorized frauds first killed Kapexia.

103.    Allen was repeatedly told by Kapexia that Zink HAD NO AUTHORITY and LACKED the VOTES to do this on August 07, 2014.  Discovery evidence shows ZINK gave all his votes to Joe Perez in Proxy upon the initial organization of Kapexia on May 01, 2014.

**D.    The fraudulent wire fraud, forgery and identity thefts documents fully signed by Whiteside are attached, as they were wired to Allen by TREVOR ZINK. (See Exhibits in SHERMAN suit, (Dk.70, 1-2) (also see Ex. 07 herein)**

104.    Zink and Whiteside used special knowledge which Allen did not have and could not discover on his own diligence. The both knew that the stock agreements were unauthorized duplicates of the original agreement which amounted to fraud. All the manager names and titles on all the documents were illegally changed and forged by Zink to be Whiteside's information, a non-member of Kapexia who in Feb 2019 admitted under oath in his deposition he <u>did</u> know these agreements were fraudulent and admitted he was not the manager. Neither, of them said a word to Allen about it.  Both Zink and Whiteside have testified that <u>none</u> of the other 5 Kapexia members ever <u>signed</u> an Kapexia Operating Agreement <u>or</u> ever made the required written recorded <u>vote</u> (required under California Law) to allow Whiteside to become a Kapexia member. **(See Zink (Exhibit.1) and In Whiteside's deposition, (Pg.83,L14 thru 84,L18 ; also Exhibit 14)**

105.    Whiteside also testified that he was aware and knew "Trevor Zink had "<u>no authority to act alone</u>" without at least Joe Perez's permission which he did not have. On information, belief, sworn testimony and evidence, Joe Perez (the real managing member) specifically did not know about or consent to the scam on Aug 07, 2014. Later, he was told to "go along for now" by Zink.

106. Zink memorializes his phone call to Allen in the email (**see Ex. 2)**. Allen directed to Zink to send him a "confirming" email while he was on the morning telephone call with Zink, with the reason for the new overnight signature changes to be confirmed in writing. (titles and signature changes on SPA) Allen also requested a copy of the new signed Kapexia Operating Agreement Zink confirmed was signed, and Zink promised one. Allen never got a signed one, ever.

107. Zink and Whiteside continually strung Allen along with their many false promises. Promises made before and after the forged fraudulent documents above were executed. For example, **a year after the first four forgeries,** in May of **2015**. Zink wrote an "Indemnity Agreement" promising in it to protect Allen all while AGAIN begging Allen to sign new documents with Whiteside (documents that could erase their frauds). AGAIN, Zink created this fraud riddled document and forwarded it to Whiteside who forwarded it to Allen by email. Zink meant for it to create, invent and then document false history. It contained many false facts in it, for example, falsely claiming "*Kapexia and Autoficio are one and the same company again*". This was over a year into the scam in 2015. Joe Perez told Allen that the facts as Zink told them were not true and he provide Allen with proof emails and documents so Allen refused to sign it. **(SEE EX. 4)**

108. A better example of Zink's fraud is on **August 06, 2014**, just hours before Allen signed the SPA, LOC and MOU, Barrett emailed Zink twice, demanding that Zink clarify a key term in the LOC document. This term was a condition, a material term, previously negotiated and agreed to by Kapexia. The first email below, **(see Ex. 5)** Cimble's Barrett is asking **Zink**, to clarify :

> *"Finally, and just to be clear, on the LOC where it talks about the $125K being*
> *converted to equity without shares being issued, I want to confirm that just*
> *means that Brian's cost basis for the purchase of 76.15%* [should be 7.14%]
> *(emp.add.) of Cimble has increased, but there are no other ramifications in*

*terms of shareholding percentages or a continued debt guarantee of any kind.*

*We are happy to have you reply in the affirmative to this email if so". Paul*

.

109.  "Aug. 06, 2014 At 14:54 the following <u>material reply</u>) ***Zink replied*** :

"*Paul, <u>confirming your understanding</u> of the 7.14% issue as set forth in both of*

*your emails below,* [above] <u>*if the options [in SPA] (emp. add.) are not exercised,*</u>

<u>*then Cimble does not repay the loan and Kapexia gets no additional equity.*</u> *It will*

*not be debt forgiveness so as to save Cimble the tax hit, instead, the $125K* [LOC

note] (emp. add.) *will become part of the basis (acquisition costs) for the 7.14%.*

*If your understanding differs in any way, please let me know"  Trevor.*


110.    This is a material fact and a Zink fraud, and Whiteside's law suit is based on it, one way

or the other. This was a Kapexia release clause, a (Kapexia is the Lender) <u>promise</u> <u>to</u> Cimble,

(Cimble is the Maker) it would not be injured if the deal did not finish as represented.  Kapexia

did not exercise either option as required by the above conditions.  Therefore, the release clause

was fulfilled and the basis for Whiteside's SHERMAN suit is disproved.

111.    This was a highly negotiated material PROMISE Kapexia's attorney was clarifying, and

he used it to induce Allen to rely on it which Allen did and Allen did sign, and he was injured

because he believed Zink. Allen agreed to sign, and did sign the first legitimate documents right

after this with Joe Perez and not Whiteside. This was the primary reason Allen used when

placing Cimble in the first SPA with Kapexia, but Zink, a Kapexia member who promised it had

special knowledge that he had no intentions to keep his word. This was material, without having

been given this promise in writing by Zink, Cimble and Allen would <u>not have signed</u> the SPA or

LOC and walked away, and sold to AAMP of America who had a competing offer on the table.

112.    It is an undisputed fact, on the same day, August 06, 2014, Joe Perez, CEO of Kapexia L.L.C. signed a legitimate first set of agreements executing a Share Purchase Agreement, a signed Memorandum of Understanding including a Letter of Credit and a Roles and Responsibilities document and then sent them to Allen with his legal signatures affixed.

113.    Zink and Whiteside tortiously interfered with those legally executed Kapexia/Cimble SPA and LOC documents Joe Perez signed and sent to Allen on Aug. 06, 2014 by convincing Allen using fraud to allow novation of those documents with the Whiteside forgeries on the morning of August 07, 2014.

114.    This tortious interference completely destroyed Kapexia and the company it had just purchased, Allen's Cimble Corp.

115.    These act were eventually discovered by Joe Perez, then this backfired on Defendants, and resulted in an internal Kapexia fight, a brawl, with Joe Perez and 4 other Kapexia members aquiver against Whiteside and Zink. This left Cimble hanging in a deadly crossfire, helpless to defend its self or escape the then unknown frauds that just been executed on Allen, buried in the second SPA, LOC, and MOU.  This fact was hidden from Cimble and Allen for over four years.

116.    Under 2014 California Revised L.L.C. Statues, a member managed L.L.C. like Kapexia, may only change its management status to Manager Managed by an Operating Agreement signed by all the members. In Kapexia's case, it is an undisputed fact that a **signed** Operating Agreement does not exist.  Therefore, only member Joe Perez who controls 70% of Kapexia can legally sign for Kapexia.  Zink cannot legally make extraordinary decisions to bind the company alone.  Zink forged and uttered false documents Whiteside legally could not sign. **(California L.L.C. statutes; See Ex. 6)**

## C.        DEFENDANTS SHERMAN EXHIBITS ARE ALL FORGED FRAUDS

117.    Whiteside's and Zink conspired to act out a criminal scheme to defraud Allen. They secured Allen's signature by fraud (**forgery**). This was a fraud in a stock purchase transaction.

This constitutes the utterance of a false document by wire (**wire fraud**), and was actually successfully used to buy stock with false or fraudulent documents. These securities frauds have criminal and civil remedy and penalties. See Texas Business and Commence Code, Chapter 27.

118.    Zink emailed all documents to Allen <u>by wire</u> for the purpose of executing a scheme. On Aug. 07, 2014, Zink and Whiteside conspired to transmit to Allen the forged documents they both represented were lawful and truthful, **by wire**. <u>It is</u> a matter of law, a fact, they uttered a forged SPA they knew was fraudulent to Allen, sent by wire to purchase Cimble Corp securities.

119.    On information and belief, a day later when Joe Perez discovered the above forgeries he called Zink complaining about them.  Zink wrote Perez (**see 8-8-14 email; Ex.7**) emails to justify the forgery, <u>the day after,</u> on **Friday August 08, 2014** at 3:33 PM. **Subject: *Kapexia Operating Agreement Draft**. Attached was a 64 page file entitled: *Operating Agreement (TJZ – 8-4-14).docx*. ZINK:

> *"This is the latest one* [Kapexia Operating Agreement] (emp.
> add) *that Brian and his attorney approved, pending the updated*
> *Cap Table".   Trevor*

120.    This **<u>unsigned</u>** 64 page 8-<u>8</u>-14 Kapexia Operating Agreement has no changes from the 8-4-14 original Perez provided to Allen on 8-5-14.  It list <u>Joe Perez as the CEO and as "the"</u> <u>Kapexia "Manager" in section 3.1 B</u>.  Joe Perez is also listed CEO in 3.9A.  This unsigned document did <u>not show</u> Brian Whiteside as a "manager" in any way.  Zink knew this was important to Allen because they had discussed it in emails several times.

121.    Indisputably, as a matter of law, Whiteside's has NO power to bind Kapexia nor did he have any fiduciary duty to protect Kapexia <u>or Cimble</u>, from his frauds, and he did not. He consciously executed a conspiracy by signing the SPA, LOC and MOU with Cimble. Allen relied on Whiteside's fraud to act. Allen's actual reliance caused serious financial injury to Allen and killed Allen's company

122.    Brian Whiteside and Trevor Zink fraudulently induced Allen to sign their second forged SPA, LOC, and MOU on August 07, 2014 for no apparent reason but to commit frauds on Allen.

123.    Whiteside and Autoficio claim they sent Cimble money. Both should not be allowed to maintain the SHERMAN suit or profit from their own frauds. Whiteside should not be allowed to claim capacity, authority or standing to sue defendants in SHERMAN when he sent money knowing he also had a real reason and a duty to protect himself. Especially after he backed out of the Kapexia deal on August 12, 2014. Whiteside knew he was sending Cimble money "without an agreement" based on his own emails about the forged documents. Caveat Emptor! By any means, Whiteside and Autoficio lacked any authority to send money directly to Cimble or to Allen. Especially by going around Kapexia which was prohibited by his May 16, 2014 NDA and Non-Compete Agreement he signed with Kapexia. The fact that Defendants claim they wired Cimble money directly, knowingly, without any agreement between either Whiteside or Autoficio and Cimble. Whiteside had no legitimate reason to do it, there was no agreement to do so. Caveat Emptor! Whiteside's money was sent to further execute a scam, a scam he created, and he continued to send money when he knew it was wrong and against all acceptable principles of business, and was not smart. But, Whiteside knew he signed forged frauds and had to keep up the charade, so he sent money to directly Cimble around Kapexia. (**Exhibit 15 Pg, 42**)

124.    The frauds described above caused miasma and an explosion of the entire Kapexia team but more importantly it destroyed the entire deal with Cimble hanging in the balance. All real Kapexia shareholders were apoplectic and unbeknown to Cimble, complained violently against Whiteside and Zink. Never the less, On belief, Zink adamantly told Perez, again, "do not tell Allen" about Whiteside not being a manager or about the unsigned Operating Agreement.

**D.      WHITESIDE AND ZINK USE FORGERY AND FRAUD TO STOP AAMP DEAL**

125.    Zink and Whiteside knew Allen was negotiating with AAMP of America to buy Cimble. Allen really wanted to sell Cimble to AAMP who had made a legitimate offer to buy which panicked Zink. Whiteside admitted in deposition their aim was to stop Allen's deal with AAMP.

126.    Before and during Allen's due diligence with Kapexia, Allen was openly negotiating with other large technology firms Allen believed were willing to acquire Cimble for up to $7.25M dollars. They included Novatel, AAMP and Rostra. Whiteside testified in his deposition that he also knew this. Allen believes they executed the scheme to stop AAMP. **(Pg. 21 lines 7-9 in Exhibit 3) and (Pg. 79 line 6 through Pg. 80, line 8; Exhibit.8)**

127.    For example five days before Barrett sent Perez the FIRST Cimble "slide deck", Allen on April 04, 2014, at 1:04 P.M, sent the same slide deck to Ron Freeman, the CEO, at AAMP, in an email, **see (Exhibit 9)** with the subject line: *This is a "what is it" deck.* Attached to the email is the slide deck called, *PARTNER PRESENTATION 2.2 AAMP.pdf.* This deck has the exact same Enterprise Value slide of which Defendants now complain about in SHERMAN. The same slide showing Cimble's piece price is $7.25M. This was the starting "asking price" for Cimble based on a reasonable valuation of Cimble's single parts as outlined in the attached deck. Allen confidentially writes to Ron Freeman:

> *["Ron, Attached is a new deck...I added a couple of slides and deleted some. This is just refresh of what I sent yesterday and I corrected Pauls Math on the **Enterprise Value slide which is really just to convey what it would cost to develop what we have done from scratch today and delineate what would be included in a sale']***

128.    AAMP could have realized multiples of Cimble's $7.25M asking price if it bought and then actually used the SecureConnex assets of Cimble. Kapexia could not use the Cimble assets

after the fraudulent acts described above because its business plan, cash and human resources were destroyed by the frauds. Kapexia never received investment from Whiteside or anyone else.

129.     Zink, Whiteside and others at Kapexia made false statements showing that partnering with Kapexia instead of AAMP could create additional tens of millions dollars more profit for Cimble stockholders. This was a concerted effort by Kapexia to convince and induce Allen not to sell Cimble to AAMP. In Allen's due diligence, Zink made several verbal fraudulent statements in a recorded telephone call with Allen made on May 19, 2014 at 10:00 AM CDT.  At trial, the recording will be played of Zink uttering frauds and correcting their co-marketing agreement.

130.     In two other written replies to Allen's due diligence requests from Kapexia and Whiteside, both dated June 27, 2014 and both contained misleading statements and promises, Zink and Whiteside knew they were false when they were sent.   Allen relied on these representations when deciding to entangle Cimble with Kapexia. Because of these promises and fraudulent misrepresentations, Allen agreed to take less than his asking price. Both Exhibits are examples of the fraudulent representations made to Allen. **(Perez, Ex.10)(Whiteside Ex.11)**

**E.          ZINK OMITTED SPECIAL KNOWLEDGE ABOUT WHITESIDE**

131.     For example, **August 05, 2014**, at 3:33 PM**, before** Allen signs the first SPA, LOC and MOU **with Joe Perez**, Trevor Zink wrote the following email **only** to Joe Perez, Kapexia's real CEO, founder, and MAJORITY shareholder.   Zink is complaining to Joe about Whiteside's latest ridiculous counter equity proposal referring to the unsigned Kapexia Operating Agreement. Whiteside never signed this Operating agreement, no deal was ever made.   Zink's email's is below, Subject line: ***Joe (only)***    Zink rejects Whiteside's proposal and says  "This is a no-go" **(See Exhibit. 12)**

>    "***This is a no-go****. He* [Whiteside] (emp. added) *wants the priority and he wants all the up-front ownership. He gets 51% plus a priority return, then when all the*

*risk is gone he drops down. That's not how it works. If he wants 51% of the vote until we reach our goals, I'm fine with that. But the equity is going to be the same on both sides of the goals. Let's get him down to 31% and then we'll take care of the rest **as between us (you GB, Ken and me)**".*    [GB and KEN are other Kapexia members that are called out; see unsigned 8-8-14 Operating Agreement.]

## CAUSES OF ACTION

### COUNT 1:                    FORGERY AND WIRE FRAUD

### See: 18 US CODE §1343, 18 US CODE § 513, U.S. Code § 479,; CA CODES (pen:470-483.5), SEC RULE 10b-5, Tx.Pen.Code-PENAL § 32.21. Forgery § a.(1)(i);

132.    Allen repeats and realleges the preceding paragraphs as if fully set forth herein.

133.    There was a transaction involving securities, specifically between Kapexia and Cimble.

134.     In connection with the transaction involving securities, as described more fully above, Whiteside and Zink made multiple forgery's, wire frauds and repeated false material facts in a stock scam. Whiteside and Zink made false promises regarding future conduct that was prohibited by law. They induced Allen's lawful signature on a forged securities instrument of apparent legal efficacy, and apparent foundation of a legal liability between Cimble and Kapexia.

135.    Whiteside and Zink' forgery, wire fraud, false representations, failures to disclose, and false promises clearly induced Allen; (a) to partner Cimble with Kapexia instead of AAMP, (b) to act by re-signing a second set of forged stock purchase contracts (the SPA, LOC and MOU dated August 07, 2014) with Whiteside, (c) to allow novation of the signed documents from the evening before signed with Joe Perez, as Manager. (d) to sign forged documents containing misrepresented illegal signatures, (e) to actually complete the sale of Cimble corporate stock to fraudulent purchasers. These inducements caused Allen to act and Allen did act and was injured.

136.    Allen justifiably relied on Whiteside and Zink' forgery, false representations, failures to

disclose material facts, and false promises intended to induce and inform his decision sell Cimble Stock to Kapexia under the SPA, and he relied on them specifically in deciding to execute the sale to Kapexia. Allen's reliance on Whiteside and Zink' false representations, failure to disclose material facts, and false promises to perform resulted in Allen being injured and Cimble being destroyed. Allen seeks actual damages of at least $7.25M dollars. Allen also seeks to recover actual and exemplary damages including forfeiture of the 7.14% of Cimble stock fraudulently purchase using the secret malicious conspiratory nature of Whiteside and Zink's outrageous personal participation in the described fraudulent behavior. Zink and Whiteside acted in concert with actual knowledge of the crime they planned to execute on Allen. Allen wants Justice.

**COUNT 2:        STATUTORY FRAUD – TEX. BUS. & COM. CODE § 27.01.**

137.   Allen repeats and realleges the preceding paragraphs as if fully set forth herein.

138.   In connection with the transaction involving securities, as described more fully above, Whiteside and Zink made multiple false representations of material facts, failed to disclose material facts when they had a duty to do so, and made false promises regarding future conduct. Whiteside and Zink benefitted by their actions and inactions, by not disclosing that theirs, their fellow agents' and co-conspirators written and oral representations were false, and were in fact known forgeries. By not disclosing material fraudulent facts when they had absolute duty to do so, **before** inducing Allen's obvious reliance, and by not performing the promises made **before** the second SPA LOC and MOU were executed the first time, Zink and Whiteside injured Allen.

139.   Whiteside and Zink' representations were false, their failures to disclose, and false promises were made for the purpose of inducing Allen to; (a) partner Cimble with Kapexia, (b) sign with Whiteside using Zink's forged stock documents with Whiteside's fraudulent title and worthless signatures on them to purchase Cimble corporate stock, (c) contract with attorneys and consultants to implement Cimble's partnership with Kapexia, defend the SHERMAN lawsuit and prosecute this one; (d) effectively string Allen and Cimble along by continuing to utter the false

validity of the fraudulent documents and fraudulent written statements for over four (4) years.

140.     Allen justifiably relied on Whiteside and Zink' false representations, failures to disclose material facts, and false promises in making his decision sell Cimble Stock to Kapexia under the SPA.    Zink and the Whiteside had actual knowledge and actual thoughts and considerations knowing Allen would be injured, but in their greed, they simply did not care. In the alternative, Whiteside and Zink made their representations and promises recklessly, as positive assertions, and without knowledge of their truth. Allen's reliance on the false representations, failure to disclose material facts, and false promises to perform, caused injury of $7.25M to Allen.    Allen also seeks his fees, attorney fees, actual costs, actual damages and exemplary damages.

**COUNT 3:**                         **COMMON LAW FRAUD.**

141.     Allen repeats and realleges the preceding paragraphs as if fully set forth herein.

142.     Whiteside and Zink made false representations, filed false sworn statements with the courts, failed to disclose material facts they had a duty to disclose, and made false promises of future performance.    Whiteside and Zink' representations and promises were material, and they were false and meant to intentionally hurt Allen and Cimble.    Whiteside and Zink' failures to disclose and purposely omitted important material facts did in fact injure Allen and kill Cimble.

143.     Whiteside and Zink made the false representations and promises, they failed to make material disclosures with the intent to deceive Allen and Cimble into acting in reliance on them. For example, the stock purchase was under the Share Purchase Agreement that was a forgery. The stock purchase under the SPA was for Kapexia, L.L.C., ONLY, and only for its own account per the SPA section 4.2. Whiteside tortiously sent money directly to Cimble, fraudulently claiming it was sent under the SPA, claiming it was on Kapexia's behalf [without an Agreement] directly around Kapexia and direct to Cimble. Whiteside testified in his deposition that it was sent in his own behalf.    Whiteside, having reason to expect Allen and Cimble would act in

reliance on attorney Zink's, words, conspired with Zink on August 07, 2014 to make the stock purchase fraudulent by uttering the forged corporate stock Share Purchase Agreement.

144.    Allen justifiably relied on Whiteside and Zink' representations, failures to disclose, and false promises of future performance. Before Allen agreed to the stock purchase under the Share Purchase Agreement entangling his company Cimble, and before Whiteside and Autoficio tortiously interfered with the Kapexia-Cimble transaction and sent funds to Cimble guised under the SPA and LOC, Allen did not know Whiteside and Zink' representations and promises were false, nor was Allen aware of facts indicating they were false, and Allen was not aware of the material information Whiteside and Zink failed to disclose that Whiteside had no legal authority. Whiteside and Zink' false statements and promises, and failures to disclose, caused Allen actual injury, including actual damages of $7.25M dollars for destroying Cimble Corp. Allen also seeks to recover exemplary damages, fees, costs and attorney fees for damages of the egregious frauds.

## COUNT 4: CONSPIRACY TO COMMIT FRAUD;U.S. Code § 371 & 15.02 Tex.Pen.Code.

145.    Allen repeats and realleges the preceding paragraphs as if fully set forth herein.

146.    Whiteside and Zink conspired together to made false representations outside the course of Kapexia's normal business in a stock transaction made with Allen, a transaction in which Kapexia had financial interest, including false representations representing the value of Kapexia, L.L.C., Kapexia's assets and, and any marketing/sales agreements Kapexia had in place, signed, prior to Whiteside and Zink's identity fraud, forgery, and misrepresentation in SPA, and MOU.

147.    Whiteside and Kapexia attorney Zink together with the OMNI LAW FIRM conspired and emailed the forged SPA, LOC and MOU documents to Allen with the false representations.

148.    They conspired again and sent Cimble the forged Non-Compete on Aug. 11, 2014. Allen justifiably relied on the conspiracies, frauds, and continuous omissions and was injured. Allen seeks to recover actual and exemplary damages because of injury by these frauds.

## **DEMAND FOR JURY TRIAL**

149.    Allen demands a trial by a jury.

## **PRAYER FOR RELIEF**

150.    For the reasons detailed above, Allen respectfully request judgment against Brian Whiteside, Autoficio, L.L.C., and ONMI LAW FIRM's attorney Trevor Zink personally and professionally as Kapexia's attorney who perpetrated the frauds on Allen for the following:

- Actual damages for the entire $7.5MM value of the destroyed Cimble Corp.;

- Exemplary damages, uncapped pursuant to Tex. Civ. Prac. & Rem. Code § 41.008(c)(11) because Whiteside and Zink conspired to secured execution of the Share Purchase Agreement and LOC by forgery, fraud and knowing deception;

- Attorneys' and expert fees for Autoficio's, Whitesides' and Zink' forgery, statutory fraud and misrepresentations, and pursuant to Tex. Bus. & Com. Code § 27.01(e) and Tex. Civ. Prac. & Rem. Code § 38.001; and conspiracy to commit fraud.

- Costs, including costs of court; pre-judgment and post-judgment interest at the highest rate(s) allowed by law; and

- Such other and further relief, at law or in equity, to which Plaintiff Allen may show himself to be justly entitled.

Respectfully Submitted,

Alvin C. (Chuck) Allen, Jr.

Pro Se, Plaintiff

caatglobal@gmail.com / 936-346-1103

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | |
|---|---|
| ALVIN C. ALLEN Jr. <br>     Plaintiff | Civil Action No. _____ |
| v. | JURY TRIAL DEMANDED |
| TREVOR ZINK Esq., BRIAN WHITESIDE <br> AND AUTOFICIO, L.L.C. <br>     Defendants | |

---

### PLAINTIFF ALLEN'S CERTIFICATION OF HIS ORIGINAL COMPLAINT

### AND HIS CAPACITY TO SUE

TO THE HONORABLE JUDGE,

NOW COMES,  Alvin C. Allen, Jr. Plaintiff, who comes before this court to file his ORIGINAL CERTIFIED COMPLAINT.

I certify I am over 21 years of age and qualified to make this verification. I do hereby certify that my ORIGINAL COMPLAINT is true and correct as to the following;

- I have written and reviewed the entire complaint.
- I know or believe that all allegations that I, the plaintiff have personal knowledge of to be true.
- I believe the allegations that I do not have personal knowledge of to be true based on specified information, documents, or both.

DERIVITAVE ACTION

I am the CEO, Founder, 92.875% stockholder and sole director of Cimble Corp.  I have endeavored to find representation for my interest in the company and cannot. Therefore, I have no other option than to file suit Pro Se today to protect my substantial interest in Cimble Corp.  I certify Cimble has no funds to hire council, and neither do I.

I Alvin C. Allen Jr. do hereby certify under oath that I have made the forgoing statements and they are true.

_____

Alvin C. Allen Jr.

Pro Se, Plaintiff

State of Texas County of _Liberty_

Before me, (insert the name and character of the officer), on this day personally appeared Alvin C. Allen Jr, known to me (or proved to me on the oath of ___Texas DL___ or through (description of identity card or other document) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this ___10th___ day of ___February___ 2020 (year). (Personalized Seal)
Notary Public's Signature

Notary

KEISHA L ROBINSON
NOTARY ID #12484619-5
My Commission Expires
March 03, 2020